## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

Civil Action No. Civil Action No. 1:20-cv-01437

ANDREW PANOS and ANTONIO
VELOTTA, on behalf of  themselves and
others similarly situated,

                    Plaintiffs,

vs.

LIVE NATION WORLDWIDE, INC.,
a foreign corporation, MADONNA
LOUISE CICCONE, individually, LIVE
NATION MTOURS (USA), INC. and
BROOKLYN ACADEMY OF MUSIC,
INC.

                    Defendants.

### AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, ANDREW PANOS and ANTONIO VELOTTA, as Class Representatives, on

behalf of themselves and all others similarly situated, by and through their attorneys, in

complaining against Defendants, LIVE NATION WORLDWIDE, INC., a foreign corporation

("Live Nation"), MADONNA LOUISE CICCONE, individually ("Madonna"), LIVE NATION

M TOURS (USA), INC. ("MTours"), and BROOKLYN ACADEMY OF MUSIC, INC., including

the Howard Gilman Opera House ("the Venue"), state as follows:

### INTRODUCTION

1.      This class action complaint is filed on behalf of two consumers, and a number of

other consumers who will come within the class, who were lulled into purchasing expensive tickets

for a concert to be put on by one the premier performers of the past 40 years. Defendants had

advertised, promoted, and covenanted that Madonna would appear for a series of concerts beginning

at 8:30 p.m., many of which did not begin until 10:30 p.m. or later. By the time of the concerts'
announcements, Madonna had demonstrated flippant difficulty in ensuring a timely or complete
performance, and Live Nation, MTours, and the Venue were aware that any statement as to a start
time for a show constituted, at best optimistic speculation. Defendants' actions constitute not just a
breach of their contracts with the Class Members, but also a wanton exercise in false advertising,
negligent misrepresentation, and unfair and deceptive trade practices. As discussed, *infra*, these acts
or omissions are not countenanced by law, and the Class Members should be compensated for their
damages.

## **PARTIES, JURISDICTION, AND VENUE**

1.      At all times mentioned herein, Plaintiff, ANDREW PANOS (hereinafter "Panos"),
was and is an individual over the age of 18 residing in Union County, State of New Jersey.

2.      At all times mentioned herein, Plaintiff, ANTONIO VELOTTA (hereinafter
"Velotta"), was and is an individual over the age of 18 residing in Queens County, State of New
York.

3.      Upon information and belief, at all times relevant hereto, Defendant, Live Nation,
was and is a foreign business corporation organized and existing pursuant to the laws of the State
of Delaware and registered to do business in the State of New York, and doing business as a concert
promotor in the State of New York.

4.      Upon information and belief, at all times relevant hereto, Defendant, Madonna, was
and is an individual residing in the County of New York, State of New York, and doing business in
the State of New York as a concert performer under the name "Madonna".

5.      Upon information and belief, at all times relevant hereto, Defendant, MTours is a
foreign corporation doing business in the County of New York, State of New York.

6.     Upon information and belief, at all times relevant hereto, Defendant, Brooklyn Academy of Music, Inc. is a non-profit corporation doing business in the County of Kings, State of New York

7.     Defendants have removed this action from state court to this Court and have thereby invoked this Court's jurisdiction.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the contract at issue was entered into and/or performed in the County of Kings, State of New York, and the cause of action arose and/or accrued in the County of Kings, State of New York.

9.     All conditions precedent to this action have occurred, been performed, or have been waived.

### GENERAL ALLEGATIONS

### AS TO PLAINTIFF PANOS

10.     On or about May 16, 2019, PANOS purchased, for valuable consideration in the amount of $800.00, two tickets to attend a musical performance by Defendant, Madonna, during her "Madame X" Concert Tour.

11.     The above tickets were purchased from Defendant, Madonna, through Tickets Today.

12.     PANOS was directed to obtain the e-tickets from Defendant, Live Nation, in conjunction with MTours, which, for the purpose of the Madame X Concert Tour, acted as a promoter and agent for Defendant, Madonna.

13.     The terms and conditions printed on the face of the aforesaid ticket stated that the musical performance by Defendant, Madonna, was to occur on September 21, 2019, at the Venue, commencing at 8:30 p.m.

14.    The concert for the "Madame X" tour that took place in Brooklyn, New York, on September 21, 2019, started at 11:30 p.m., rather than at 8:30 p.m.

15.    Defendants did not provide any notice to Panos that the concert would start at a later time.

16.    Panos arrived before 8:30 p.m. at the venue as it was indicated on his e-ticket. At the concert, Madonna apologized to the audience and admitted that the late start was her fault.

### AS TO PLAINTIFF VELOTTA

17.    On or about September 27, 2019, Velotta purchased, for valuable consideration in the amount of $324.51, one ticket to attend a musical performance by Defendant, Madonna, during her "Madame X" Concert Tour.

18.    The above ticket was purchased from Defendant, Madonna, through StubHub, a website where sellers sell tickets on the secondary market.

19.    Velotta was directed to obtain the e-tickets from Defendant, Live Nation, in conjunction with MTours, which, for the purpose of the Madame X Concert Tour, acted as a promoter and agent for Defendant, Madonna.

20.    The terms and conditions printed on the face of the aforesaid ticket stated that the musical performance by Defendant, Madonna, was to occur on October 1, 2019, at the Venue, commencing at 8:30 p.m.

21.    The concert for the "Madame X" tour that took place in Brooklyn, New York, on October 1, 2019, started at 10:40 p.m., rather than 8:30 p.m.

22.    Defendants did not provide any notice to Velotta that the concert will start at a later time. Panos arrived before 8:30 p.m. at the venue as it was indicated on his e-ticket.

## AS TO ALL PLAINTIFFS

23.     The concert tickets purchased, for valuable consideration, by Plaintiffs, and all other ticket holders for the event specifically stated that the concert performance was to begin at 8:30 p.m., and said representation regarding the start of the performance was material to Plaintiffs' agreement to purchase the ticket.

24.     Defendant, Madonna, the performer for the above event and has a long history of arriving and starting her concerts late, often more than two hours late. This history occurred throughout her 2016 Rebel Heart Tour where Madonna continuously started her concerts over two hours late.

25.     Madonna continued to appear extremely late to concerts for the Madame X tour dates in Brooklyn, New York,  and Chicago, Illinois in September and October, 2019.

26.     Defendants did not offer refunds to ticketholders, including but not limited to Plaintiffs, who could not or did not want to attend a concert starting after 10:30 p.m.

27.     After the time change, ticketholders under the age of 18 were no longer able to legally attend the concert without an adult, essentially making their tickets worthless.  Moreover, ticketholders had to work and go to school the next day, which prevented them from attending a concert that would end around 1:00 a.m.

28.     Additionally, Defendants failed to provide a notice to the ticketholders that the concert would start late, which resulted in the ticketholders waiting for hours for the concert to begin at the forum, being unable to resell their tickets; minors being unable to remain without an accompanying adult; and others being left stranded in the middle of the night because they missed their arranged ride home or the metro was closed. Moreover, ticketholders, who were inside the venue, were unable to use their phone to arrange for a ride home at a later time, because Madonna

collected their phones and placed them in pouches once they entered the venue.  Yet again, Madonna did not provide any notice that phone-use would not be allowed in the venue before the tickets were purchased.

29.     Due to the change in the start times from 8:30 p.m. to after 10:30 p.m. and due to the fact that Defendants did not provide any notice of the time change, Plaintiffs and all Class Members suffered an extreme loss in value, making it impossible for Plaintiffs and all Class Members to recover the amount paid for said tickets by reselling them.

30.     Plaintiffs attempted, without success, to obtain a refund for the tickets purchased for the Madonna concert.

31.     Plaintiffs and all other Class Members of Madame X tour concerts taking place in New York, have been damaged as a direct and proximate result of the late start time of the concerts from 8:30 p.m., as printed on the tickets and promised to the ticket holders by Defendants, Live Nation, MTours, the Venue, and Madonna.

32.      Defendants engaged in unconscionable, unfair, and/or deceptive trade practices by offering to the public concerts that were promised to begin at 8:30 p.m. but later changed the starting time to 9:30 p.m.  However, Madonna never appeared before 10:45 p.m.

## CLASS ACTION ALLEGATIONS

33.     **Class Definition:** Panos and Velotta bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), both on behalf of themselves and on behalf of the following class:

> **(1) All individuals throughout the United States who, through Ticketmaster, purchased a ticket or tickets or became a ticketholder to a concert that was to have been performed by Madonna, as part of the Madame X Tour, in the State of New York on September 17, 18, 19, 21, 22, 24, 25, 26, 28; October 1, 2, 3, 5, 6, 7, 10 and 12, 2019 (the "Ticketmaster Class").**

(2) **All individuals throughout the United States who, through a ticket reseller or any other person or entity who is neither Ticketmaster nor the box office at the venue where the concert was to be performed, purchased a ticket or tickets or became a ticketholder to a concert that was to have been performed by Madonna, as part of the Madame X Tour, in the State of New York on September 17, 18, 19, 21, 22, 24, 25, 26, 28; October 1, 2, 3, 5, 6, 10 and 12, 2019 (the "Reseller Class").**

(3) **All individuals throughout the United State who, through the box office at the venue where the concert was to be performed, purchased a ticket or tickets or became a ticketholder to a concert that was to have been performed by Madonna, as part of the Madame X Tour, in the State of New York on September 17, 18, 19, 21, 22, 24, 25, 26, 28; October 1, 2, 3, 5, 6, 10 and 12, 2019 (the "Box Office Class").**

**(The subject classes will be collectively referred to as the "Class.")**

34.    The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

35.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add subclasses, if deemed necessary, before this Court determines whether certification is appropriate.

36.    **Numerosity under Fed. R. Civ. P. 23(a)(1):** The number of Class members are so numerous that separate joinder of each member is impractical. Upon information and belief, and subject to discovery, the Class consists of thousands of members or more, the identity of whom are

within the exclusive knowledge of and can be ascertained only by resort to Live Nation's records, included within which are Ticketmaster's records and MTours records. Live Nation has the administrative capability through its computer systems and other records to identify all members of the Class and the amount of paid by each Class member, whether any tickets were resold through Ticketmaster, and the price of the tickets upon resale, and such specific information is not otherwise available to Plaintiffs.

37.     **Commonality under Fed. R. Civ. P. 23(a)(2):** This action poses questions of law and fact that are common to and affect the rights of the Class relating to Live Nation's and MTours' business practices challenged herein, as well as the promotion of the Madame X tour, the start times for Madonna's concerts, the decision to prohibit use of cellular phones, and the ability of the Class to resell tickets through Ticketmaster. Those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

(a)     Whether there was a reasonable expectation that the concerts would start at the time originally listed on the tickets;

(b)     Whether there was a reasonable expectation that the start time of the concert was not subject to change;

(c)     Whether, subsequent to the decision to change the start time, an offer of a refund should have been made;

(d)     Whether there was a reasonable expectation that the concerts would start promptly at the time to which the start time had been changed;

(e)     Whether there was a reasonable expectation that cellular phone and other device use would be permitted;

(f)  Whether there was a reasonable expectation regarding the temperature of the venue at immediately prior to and during the duration of the concerts;

(g)  Whether a breach of contract occurred;

(h)  Whether there was a violation of the covenant of good faith and fair dealing;

(i)  Whether promissory estoppel should have prevented the changes at issue;

(j)  Whether there was a negligent misrepresentation with regard to the issues detailed in this Amended Complaint;

(k)  Whether there has been a violation of § 349 of New York's General Business Law;

(l)  Whether Defendants have been unjustly enriched with regard to the concerts..

38.   **Typicality under Fed. R. Civ. P. 23(a)(3):** Based on the facts and circumstances set forth herein, Panos and Velotta's claims are typical of the claims of the members of the Class in that they arise out of the same wrongful conduct of Defendants, with regard to the same set of concerts occurring in the same city and during the same period of time, as described herein.

39.   **Adequacy of Representation under Fed. R. Civ. P. 23(a)(4):** Based on the facts and circumstances set forth herein, Panos and Velotta will fairly and adequately protect and represent the interests of each member of the Class. Panos and Velotta each purchased tickets to one of the above-described concerts and suffered damages as a result of the changes in start time and prohibition on the use of cellular phones. In addition:

(a)  Panos and Velotta are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, actions regarding concert promoters and performers;

(b)  There is no hostility between Panos or Velotta and the unnamed Class members;

(c) Panos and Velotta anticipate no difficulty in the management of this litigation as a class action; and

(d) Panos and Velotta's legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

40.    **Predominance under Fed. R. Civ. P. 23(b)(3):** The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations (paragraph 38 and subparts) are restated and incorporated herein by reference.

41.    **Superiority under Fed. R. Civ. P. 23(b)(3):** A class is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is very small relative to the complexity of the litigation and because the financial resources of Live Nation, MTours, Madonna, and the Venue are enormous, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendants' conduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action present far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

42.    There are no known individual Class Members who are interested in individually controlling the prosecution of separate actions.

43.    Plaintiffs also bring this class action as a result of the Defendants' actions or omissions set forth herein, which actions or omissions are generally applicable to all Class Members, thereby making determination of damages appropriate to the Class as a whole.

### AS AND FOR A FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

44.    Plaintiffs repeat and reallege paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45.    Plaintiffs bring this cause of action individually and on behalf of a New York class against Defendants.

46.    Plaintiffs and the Class Members are "persons" within the meaning of GBL §349(h).  At all times relevant hereto, Plaintiffs, as well as all Class Member ticketholders, were legitimate consumers as defined by New York law and are entitled to seek the underlying relief.

47.    GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

48.    At all relevant times, Defendants had and have been engaged in business, trade or commerce in New York within the meaning of GBL § 349.

49.    At all times material hereto, Defendants solicited, advertised, offered, and provided goods and services by way of selling, promoting, and performing live music concerts, and thereby were engaged in a trade or commerce.

50.    Defendants have engaged in repeated and persistent deceptive acts and practices in the marketing of their concert tickets for the Madame X Concert Tour, including but not limited to:

a. Misrepresenting, directly or by implication, that the start time of the concert would be at 8:30 p.m.;

b. Falsely representing, directly or by implication, that the concert would start at 8:30 p.m.;

c. Failing to provide notice to Plaintiffs and all Class Members that the concert would not start at 8:30 p.m.; and

d. Failing to provide Plaintiffs and all Class Members with the option of receiving a refund.

51.    By engaging in the acts and practices described above, all of which were material, Defendants have engaged in and continue to engage in deceptive business practices in violation of GBL § 349.

52.    Defendants' acts and practices alleged herein constitute acts, uses, or employment of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise, and with the subsequent performance, of defendant in violation of § 349 of New York's General Business Law, making deceptive and unfair acts and practices illegal.

53.    Defendant's conduct is deceptive because it is likely to mislead consumers and the public by making them believe, falsely, that the concert would start at 8:30 p.m. and end at or around 10:30 p.m.

54.    Defendant's representations and omissions were materially false and misleading and likely to deceive the consuming public because Defendants knew and failed to disclose that Madonna would or would likely start the concert over two hours late and that she has a consistent history of starting her concerts over two hours late.

55.    The deceptive acts and practices of Defendant have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the other Class Members of the New York class. Indeed, Defendant's false and deceptive representations caused Plaintiffs and other members of the New York class to suffer actual and consequential damages, including but not limited to, loss of consideration paid for the tickets caused by the inability or inconvenience to attend a concert starting at after 10:30 p.m. and ending after 1:00 a.m., the devaluation of the tickets if they wished to resell the tickets, and the inability to obtain a refund for the tickets.

56.    Plaintiffs and other members of the class would not have paid for the ticket had they known that the concert would start after 10:30 p.m. and end after 1:00 a.m.  Moreover, in some places the New York metro was closed after 1:00 a.m., which left many Class Members stranded.

57.    Defendants sold more tickets because they listed the early start time.

58.    Additionally, Defendants failed to provide a notice to the ticketholders that the concert would start late, which resulted in the ticketholders waiting for hours for the concert to begin at the forum, being unable to resell their tickets; minors being unable to remain without an accompanying adult; and others being left stranded in the middle of the night because they missed their arranged ride home or the metro was closed. Moreover, ticketholders, who were inside the venue, were unable to use their phone to arrange for a ride home at a later time, because Madonna collected their phones and placed them in pouches once they entered the venue.  Yet again, Madonna did not provide any notice that phone-use would not be allowed in the venue before the tickets were purchased.

59.    By switching the start time from 8:30 p.m. to after 10:30 p.m., Defendants caused the tickets to become devalued, prevented Plaintiffs to sell the tickets and recover the value of the

tickets at the time the concert time was changed, and prevented Plaintiff from receiving a refund for the amount paid.

60.     Said actions were committed for various concerts throughout the United States sufficiently to be considered a regular business practice.

61.     In addition to pecuniary losses, Plaintiffs and the Class suffered actual harm as a result of Defendants' violations of GBL §349(a), including but not limited to, the annoyance, harassment, time, frustration, and anger due to Defendants' violations of GBL §349. Plaintiffs and the New York Class are entitled to pursue claims against Defendant for damages, statutory damages, treble damages, exemplary damages, costs and attorney's fees pursuant to GBL §349(h) to redress Defendant's violations of GBL §349(a).

62.     New York Class Members who were sixty-five years of age or older at the time of Defendants' violations of GBL §349 are entitled to pursue additional remedies pursuant to GBL §349-c to redress Defendant's violations of GBL §349(a) perpetrated against elderly persons.

63.     GBL §349 is intended to protect the consuming public and legitimate business enterprises from those who engage in unfair and deceptive acts or practices in the conduct of any trade or commerce.

64.     The acts committed by Defendants are unlawful acts or practices as defined by GBL §349.

65.     Plaintiffs have been required to retain the undersigned to represent them, and all Class Members in this matter, and are obligated to pay reasonable attorney's fees for the legal services being provided on their behalf.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as attorney fees and

costs pursuant to the Contract or other New York law or Federal law, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
## FALSE ADVERTISING IN VIOLATION OF GBL § 350

66.    Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 43 above as if the same were fully set forth herein.

67.    GBL § 350 prohibits "false advertising in the conduct of any business."

68.    At all relevant times, Defendants have been engaged in business in New York within the meaning of GBL § 350.

69.    Defendants have engaged in false advertising in violation of General Business Law § 350 by:

a. Misrepresenting, directly or by implication, the start time of the concert would be at 8:30 p.m.;

b. Falsely representing, directly or by implication, that the concert would start at 8:30 p.m.;

c. Failing to provide notice to Plaintiffs that the concert will start late; and

d. Failing to provide Plaintiffs and all Class Members with the option of receiving a refund.

70.    By engaging in the acts and practices described above, all of which were material, Defendants have engaged in and continue to engage in false advertising in violation of GBL § 350.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as attorney fees and costs pursuant to the Contract or other New York law or Federal law, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

71.     Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 43 above as if the same were fully set forth herein.

72.     Plaintiffs and all other Class Members entered into a valid and enforceable written contract with Defendants, in which Defendants offered a ticket for a concert that was promised to begin at 8:30 p.m., the terms of which Plaintiffs accepted by virtue of their purchase of such offered tickets, and which promises were contained in printed representations on tickets sold for valuable consideration.

73.     Plaintiffs and all other Class Members fully performed under the Contract by paying valuable consideration to Defendants.

74.     In breach of said Contract, Defendants, failed to provide Plaintiffs and all other Class Members with a concert that began at 8:30 p.m., but rather commenced after 10:30 p.m.

75.     Additionally, Defendants failed to provide any notice that the concert would not begin at 8:30 p.m.

76.     As a direct and proximate result of said breach, Plaintiffs and all other Class Members have suffered actual and consequential damages including, but not limited to, loss of consideration paid and the devaluation of the ticket if they wished to resell the ticket.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as attorney fees and costs pursuant to the Contract or other New York law or Federal law, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL

77.    Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 43 above as if the same were fully set forth herein.

78.    Defendants represented to Plaintiffs and all Class Members that the tickets they were buying were for a concert beginning at 8:30 p.m.

79.    Plaintiffs and all Class Members reasonably relied on said representation that the concert would begin at 8:30 p.m. when they bought their tickets to the Madonna Madame X concert and paid valuable consideration for same.

80.    Defendants changed their position by allowing Madonna to start her performances whenever she chose but never before 10:30 p.m., to the detriment of Plaintiffs and all similarly situated Class Members, including but not limited to, the inability or inconvenience to attend a concert starting at 10:30 p.m. and ending after 1:00 a.m.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as attorney fees and costs pursuant to the Contract or other New York law or Federal law, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

81.    Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 43 above as if the same were fully set forth herein.

82.    At all times material hereto, Defendants represented to Plaintiffs and all other Class Members that they were buying a ticket to a concert that would start at 8:30 p.m.

83.    Said representation was made for the purpose of inducing Plaintiffs to purchase concert tickets to Madonna's Madame X tour.

84.    As a result of said representation, Plaintiffs and all Class Members were induced into purchasing said concert tickets.

85.    Defendants had a duty of reasonable care to provide Plaintiffs with a concert that began at 8:30 p.m.

86.    Based on the history of Madonna arriving late to prior concerts, Plaintiffs knew or should have known that said concerts would not start at 8:30 p.m. but rather at 10:30 p.m. or later at the time they scheduled and sold the tickets to Plaintiffs and all other Class Members.

87.    As a result of said misrepresentation, Plaintiffs and all Class Members suffered actual and consequential damages, including but not limited to, loss of consideration paid for the tickets caused by the inability or inconvenience to attend a concert starting at 10:30 p.m. and ending after 1 a.m., the devaluation of the tickets if they wished to resell the tickets, and the inability to obtain a refund for the tickets.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as attorney fees and costs pursuant to the Contract or other New York law or Federal law, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## AS AND FOR A SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT

88.    Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1 through 43 above as if the same were fully set forth herein.

89.    Defendants have collected money for concert tickets from Plaintiffs and other Class Members who reasonably believed the concert would promptly begin at 8:30 p.m. Had Plaintiffs

and other Class Members known that the concert would start at 10:30 p.m. or later, they never would have agreed to purchase the tickets.

90.     As a result, Plaintiffs and the Class have conferred a benefit on Defendants.

91.     Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred.

92.     Defendants will be unjustly enriched if it is allowed to retain the aforementioned benefits, and Plaintiff and each Class member is entitled to recover the amount by which Defendant was unjustly enriched at Plaintiff's and each Class member's expense.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as attorney fees and costs pursuant to the Contract or other New York law or Federal law, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

93.     Plaintiffs repeat and reallege paragraphs 1 through 43 of the Complaint as if fully set forth herein.

94.     Plaintiffs bring this cause of action individually and on behalf of a New York class against Defendants.

95.     Plaintiffs and the Class Members are "persons" within the meaning of GBL §349(h).  At all times relevant hereto, Plaintiffs, as well as all Class Member ticketholders, were legitimate consumers as defined by New York law and are entitled to seek the underlying relief.

96.     GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

97.     At all relevant times, Defendants had and have been engaged in business, trade or commerce in New York within the meaning of GBL § 349.

98.     At all times material hereto, Defendants solicited, advertised, offered, and provided goods and services by way of selling, promoting, and performing live music concerts, and thereby were engaged in a trade or commerce.

99.     Defendants have engaged in repeated and persistent deceptive acts and practices in the marketing of their concert tickets for the Madame X Concert Tour, including but not limited to:

    a.     Misrepresenting, directly or by implication, that the start time of the concert would be at 8:30 p.m.;

    b.     Falsely representing, directly or by implication, that the concert would start at 8:30 p.m.;

    c.     Failing to provide notice to Plaintiffs and all Class Members that the concert would start not start at 8:30; and

    d.     Failing to provide Plaintiffs and all Class Members with the option of receiving a refund.

100.     By engaging in the acts and practices described above, all of which were material, Defendants have engaged in and continue to engage in deceptive business practices in violation of GBL § 349.

101.     Defendants' acts and practices alleged herein constitute acts, uses, or employment of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise, and with the subsequent performance, of defendant

in violation of § 349 of New York's General Business Law, making deceptive and unfair acts and practices illegal.

102.   Defendants' conduct is deceptive because it is likely to mislead consumers and the public by making them believe, falsely, that the concert would start at 8:30 p.m. and end at or around 10:30 p.m.

103.   Defendants' representations and omissions were materially false and misleading and likely to deceive the consuming public because Defendants knew and failed to disclose that MADONNA would or would likely start the concert over two hours late and that she has a consistent history of starting her concerts over two hours late.

104.   The deceptive acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the other Class Members of the New York class. Indeed, Defendant's false and deceptive representations caused Plaintiffs and other members of the New York class to suffer actual and consequential damages, including but not limited to, loss of consideration paid for the tickets caused by the inability or inconvenience to attend a concert starting at after 10:30 p.m. and ending after 1:00 a.m., the devaluation of the tickets if they wished to resell the tickets, and the inability to obtain a refund for the tickets.

105.   Plaintiffs and other members of the class would not have paid for the ticket had they known that the concert would start after 10:30 p.m. and end after 1:00 a.m.  Moreover, in some places the New York metro was closed after 1:00 a.m., which left many Class Members stranded.

106.   Defendants sold more tickets because they listed the early start time.

107.   Additionally, Defendants failed to provide a notice to the ticketholders that the concert would start late, which resulted in the ticketholders waiting for hours for the concert to begin at the forum, being unable to resell their tickets; minors being unable to remain without an

accompanying adult; and others being left stranded in the middle of the night because they missed their arranged ride home or the metro was closed. Moreover, ticketholders, who were inside the venue, were unable to use their phone to arrange for a ride home at a later time, because Madonna collected their phones and placed them in pouches once they entered the venue.  Yet again, MADONNA did not provide any notice that phone-use would not be allowed in the venue before the tickets were purchased.

108.    Said actions were committed for various concerts throughout the United States sufficiently to be considered a regular business practice.

109.    GBL §349 is intended to protect the consuming public and legitimate business enterprises from those who engage in unfair and deceptive acts or practices in the conduct of any trade or commerce.

110.    The acts committed by Defendants are unlawful acts or practices as defined by GBL §349.

111.    Plaintiffs have no adequate remedy at law.

112.    The harm complained of herein is likely to recur. The harm will be irreparable to Plaintiffs and the Class. Defendant Live Nation is one of the largest entities in the business. Anyone who desires to become a ticketholder for an event will likely interact with Defendant Live Nation.

113.    The harm complained of herein is likely to recur. The harm will be irreparable to Plaintiffs and the Class. Plaintiffs and members of the Class are likely to be lifelong Madonna fans, given the intimate nature of the experience they were supposed to receive and given the price of the tickets they purchased. Madonna will perform tours in the future. Plaintiffs and the Class may desire to purchase tickets to another tour date for a Madonna concert.

114.    Enjoining Defendants from the conduct complained of will not affect Defendants in a manner that outweighs the benefits to Plaintiffs and the Class, particularly because such an injunction would cause Defendants to cease activities they should never have engaged in to begin with.

115.    The equities balance in favor of Plaintiffs and the Class with regard to enjoining the Defendants from the conduct at issue herein.

116.    Plaintiffs have been required to retain the undersigned to represent them, and all Class Members in this matter, and are obligated to pay reasonable attorney's fees for the legal services being provided on their behalf.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants, for injunctive relief, enjoining  Defendants from advertising or promoting or selling or reselling tickets with start times for Madonna concerts, preventing the reselling of tickets when start times change prior to the date of the concert, and failing to provide refunds, and requiring the provision of advance notice of artists with a history of late start times, as well as advance notice of late start times for particular concerts when Defendants become aware that such a change is likely to occur, and any other relief that this Court deems just and proper.

SIGNATURES ON FOLLOWING PAGE

Dated: Brooklyn, New York                    Respectfully submitted,

      June 1, 2020                              */s/ Richard A. Klass*
                                                 Richard A. Klass, Esq.
                                                 Attorney for Plaintiffs
                                                 16 Court Street, 28th Floor
                                                 Brooklyn NY  11241
                                               718-643-6063
                                               RichKlass@courtstreetlaw.com


                                               */s/ Marcus W. Corwin*
                                               By: Marcus W. Corwin, Esq.
                                               Attorney for Plaintiffs
                                               6001 Broken Sound Parkway NW, Suite 404
                                               Boca Raton, FL 33487
                                               561.482.3636
                                               Admitted in Florida